## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ROBERT D. BROWN,                          )
                                          )
               Plaintiff,         )
                                          )
v.                                        )        C.A. No. 07-23 (SLR)
                                          )        JURY OF 12 DEMANDED
WILMINGTON POLICE OFFICER RINEHART,       )
WILMINGTON POLICE OFFICER DRYSDALE,       )
                                          )
              Defendants.       )


## DEFENDANTS' OPENING BRIEF IN SUPPORT
## OF THEIR MOTION FOR SUMMARY JUDGMENT



Rosamaria Tassone (I.D. #3546)
City of Wilmington Law Department
Louis L. Redding City/County Building
800 French Street, 9th Floor
Wilmington, Delaware 19801-3537
(302) 576-2175


Dated: March 7, 2008

## **TABLE OF CONTENTS**

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

NATURE AND STAGE OF PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    I.    DEFENDANT DRYSDALE HAD NO PERSONAL INVOLVEMENT IN PLAINTIFF'S ARREST.  THEREFORE, PLAINTIFF CANNOT MAINTAIN A CAUSE OF ACTION UNDER §1983 AGAINST DEFENDANT DRYSDALE . 9

    II.   DEFENDANT RINEHART IS ENTITLED TO QUALIFIED IMMUNITY FOR THE ACTIONS HE UNDERTOOK IN PLAINTIFF'S ARREST.  THEREFORE, HE CANNOT BE HELD LIABLE UNDER §1983 . . . . . . . . . . . . . . . . . . . . . . . 10

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## TABLE OF CITATIONS

Acierno v. Cloutier, 40 F.3d 597 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Anderson v. Creighton, 483 U.S. 635 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 16

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Arnold Pontiac-GMC, Inc. v. General Motors Corp.,
        786 F.2d 564 (3d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Beckwith v. Sherwood,
        2001 U.S. Dist. LEXIS 24079 (E.D. Pa. October 11, 2001) . . . . . . . . . . . . . . . 10, 12, 15

Bell v. Wolfish, 441 U.S. 520 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Bensinger v. Mullen,
        2000 U.S. Dist. LEXIS 11012 (E.D. Pa. August 4, 2000) . . . . . . . . . . . . . . . . . . . . . . . . 14

Big Apple BMW, Inc., et al. v. BMW of North America, Inc., et al.,
        974 F.2d 1358 (3d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Carrigan v. State, 957 F. Supp. 1376 (D. Del. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Chambers v. John Doe, 453 F. Supp. 2d 858 (D. Del. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . 14

Chipollini v. Spencer Gifts, Inc., 814 F.2d 893 (3d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . 8

City of Philadelphia Litig., 49 F.3d 945(3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Clark v. Condon, 2002 U.S. Dist. LEXIS 17831(September 20, 2002) . . . . . . . . . . . . . . . . . . 12

Donohue v. Gavin, 280 F.3d 371 (3d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Evancho v. Fisher, 423 F.3d 347(3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Fraser v. Pennsylvania State System of Higher Education, et al.,
        1994 U.S. Dist. LEXIS 7409 (E.D. Pa. June 6, 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Goodman v. Mead Johnson & Co., 534 F.2d 566 (3d Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . 8

Graham v. Connor, 490 U.S. 386 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 13

Harlow v. Fitzgerald, 457 U.S. 800 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Hunter v. Bryant, 502 U.S. 224 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Ingraham v. Wright, 430 U.S. 651 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Johnson v. Glick, 481 F.2d 1028 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Lamb-Bowman v. Delaware State Univ.,
    152 F.Supp.2d 553 (D. Del. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Matsushita Electric Industries Co., Ltd. v. Zenith Radio Corp.,
    475 U.S. 574 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Mellott v. Heemer, 161 F.3d 117 (3d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Metcalf v. Long, 615 F. Supp. 1108 (D. Del. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Mitchell v. Forsyth, 472 U.S. 511 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Nardini v. Hackett,
    2001 U.S. Dist. LEXIS 15896 (E.D. Pa. September 19, 2001) . . . . . . . . . . . . . . . . . 14, 15

Nelson v. Walsh, 60 F. Supp. 2d 308 (D.Del. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 14

Rode v. Dellarciprete, 845 F.2d 1195 (3d cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Rogers v. Powell, 120 F.3d 446 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Sanders v. Workman,
    2001 U.S. Dist. LEXIS 9053 (D. Del. March 26, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . 16

Saucier v. Katz, 533 U.S. 194 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 15, 16

Scott v. United States, 436 U.S. 128 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125(3d Cir. 1995) . . . . . . . . . . . . . . 7

Siegert v. Gilley, 500 U.S. 226 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Smith v. Marasco, 318 F.3d 497 (3d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Tennessee v. Garner, 471 U.S. 1 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Terry v. Ohio, 392 U.S. 1 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

United States v. Hernandez, 872 F. Supp. 1288 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

United States v. Kithcart, 218 F.3d 213 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

United States v. Padilla,
        1997 U.S. Dist. LEXIS 3911(E.D. Pa. March 31, 1997) . . . . . . . . . . . . . . . . . . . . . . . . 15

United States v. Robinson, 414 U.S. 218 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Wayne v. Borough of West Chester, 891 F.2d 458 (3d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . 8

West v. Atkins, 487 U.S. 42(1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**Statutes**

42 U.S.C. §1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**Rules**

Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fed. R. Civ. P. 56(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## <u>NATURE AND STAGE OF THE PROCEEDINGS</u>

On January 11, 2007, Plaintiff Robert D. Brown filed a Complaint in the United States District Court for the District of Delaware. Plaintiff's Complaint alleges that Defendant Wilmington Police Officers Rinehart and Drysdale used excessive force when placing him under arrest in violation of his Fourth and Eighth Amendment rights. Plaintiff's action is brought under 42 <u>U.S.C.</u> §1983. Discovery proceedings in this matter closed on January 31, 2008.

The following is Defendants Rinehart and Drysdale's Opening Brief filed in support of their Motion for Summary Judgment.

## <u>SUMMARY OF ARGUMENTS</u>

Defendant Drysdale had no personal involvement in Plaintiff's arrest.  Therefore, Plaintiff cannot maintain a cause of action under §1983 against Defendant Drysdale.  Further, Defendant Rinehart is entitled to qualified immunity for the actions he undertook in Plaintiff's arrest. Therefore, he cannot be held liable under §1983.

## STATEMENT OF FACTS

In the early morning hours of April 16, 2006, Wilmington Police Officers Matthew Hazzard and Michael Rinehart were on routine patrol in the area around the 1600 block of West 3rd Street in the City of Wilmington.  Both officers were in uniform and the vehicle they were driving was a marked Wilmington Police Department patrol vehicle.  Officer Hazzard was driving the patrol vehicle while Officer Rinehart was in the front passenger seat.  (A-1, 14-19)

Sometime between 5:00 a.m. and 5:20 a.m., in the course of their duties, the officers had observed a group of individuals loitering on the corner of 3rd and Clayton Streets.  The officers quickly dispersed the group with no incident and resumed their patrol.  Officer Hazzard drove down 3rd Street, in the wrong direction, to get to DuPont Street, one street over.[1]  There was no oncoming traffic.  (A-14-19)

Upon entering the 1600 block of West 3rd Street, the officers observed a group of individuals on the porch and porch steps of 1627 West 3rd Street.  Given the fact that it was approximately 5:20 a.m., Officer Hazzard slowed the vehicle as he was passing the group to make sure nothing was going on at the property.  As the officers came upon the group, one of the individuals on the porch, later determined to be Plaintiff Robert Brown, yelled out, "If it was me going the wrong way on the street I'd be getting locked up, mother f—!"  Both Officer Hazzard and Officer Rinehart, while remaining in their vehicle,  advised Brown to "calm down," "go inside," "relax," "nothing is going

---

[1] Defendant Rinehart recalls that Officer Hazzard drove down 3rd Street in the wrong direction in order to reach DuPont Street.  However, Officer Hazzard recalls that the reason he turned down 3rd Street into the 1600 block was that he heard what he believed to be someone yelling from that direction, and he wanted to investigate the matter.  (Aff. Hazzard, A-14-15). However, there is no dispute that the officers drove into the 1600 block of West 3rd Street and were traveling in the wrong direction.

3

on." Meanwhile, the other individuals on the porch steps began to walk away.  (A-1-2, 14-19)

Despite the fact that the officers remained in their vehicles and asked Brown to calm down and go inside his residence, Brown continued with his disorderly behavior, yelling at the officers and using profanities.  Specifically, Brown kept yelling, "F--- you, I'm on my own porch, what you gonna do;" "I'm gonna call my lawyer, f — you, I'm at my own house."  During this time, the officers continued to advise Brown to calm down to no avail.  In fact, Brown's disorderly behavior had created a disturbance, causing neighbors and other individuals in the 1600 block and the next block to come out and observe what was taking place.  (A-1-2, 4, 15, 18)

When Brown's unruly behavior continued, and the officers' verbal attempts to control the situation failed, the officers exited their police vehicle in order to place Brown under arrest for disorderly conduct.  When Officer Hazzard reached the porch,  Brown turned away from him and attempted to run into the house.  Officer Hazzard grabbed Brown by the shoulder and advised him to place his hands behind his back because he was under arrest.  Brown then pulled away from Officer Hazzard, resisting Officer Hazzard's attempt to place him under arrest.  In order to gain control of Brown and place him in handcuffs, Officer Hazzard pulled Brown to the ground.  Brown continued to struggle, laying on his hands and fighting the officers' attempts to place him in handcuffs.  The officers advised Brown numerous times during the struggle to stop resisting, however, Brown continued to disobey their orders, laying on his hands and struggling so that they could not secure his hands in handcuffs.  (A-2, 4, 15-16, 18-19)

Officer Hazzard advised Brown again that he was under arrest and to stop resisting or he was going to be sprayed with cap stun (pepper spray).  When Brown continued to struggle, Officer Hazzard sprayed Brown with his departmentally issued cap stun in an effort to gain control of

4

Brown.  After being sprayed with the cap stun, the officers were able to grab Brown's left arm and

hand.  However, Brown continued to struggle, and they could not gain control of his right hand.  At

this time, Officer Hazzard  used the heel/palm of his hand to deliver a "stun blow" to the left side

of Brown's head and Officer Rinehart used his right knee to delivered a "stun blow" to Brown's right

thigh.[2]  As a result of the officers' actions, Brown stopped resisting, and they were able to place him

in handcuffs.  (Id.)

Consistent with departmental policy, Officer Hazzard contacted their immediate supervisor,

Sergeant John Drysdale, to report the use of physical force and cap stun.  Further, due to the fact that

Brown had been sprayed with cap stun, the officers immediately transported Brown to the

Wilmington Hospital emergency room.  At the emergency room, Brown was treated for an abrasion

to his head area and his eyes were flushed with water.  (A-2, 10, 12, 16, 19)

 Sergeant Drysdale, who had not been present in the 1600 block of West 3rd Street during the

encounter between Brown and Officers Hazzard and Rinehart, met the officers at the emergency

room at approximately 6:00 a.m.  At that time, Sergeant Drysdale attempted to interview Brown.

Brown was uncooperative, belligerent and refused to answer Sergeant Drysdale's questions, telling

him, "You know what happened, f— you, your one of them."  Sergeant Drysdale also noted that

Brown was intoxicated, a fact that was confirmed by Brown.  Sergeant Drysdale explained to Brown

that he was not one of the officers who had arrested him.  Rather, he was the supervisor investigating

the incident.  As part of his investigation, Sergeant Drysdale asked Brown if he wanted to file a

_____

[2] It should be noted that Officer Hazzard does not specifically recall striking Brown with
his open palm.  (Aff. Hazzard, A-10).  However, for purposes of Defendants' Summary
Judgment Motion, Defendants will assume that Officer Hazzard struck Brown with his open
palm.

complaint against the officers.  Brown responded, "F— you, you will see."  At this point, Sergeant Drysdale concluded his interview with Brown.  (A-4-5)

At a later date, Sergeant Drysdale conducted a telephone interview of Brown's girlfriend, Kimberly Grier, who was present at 1627 West 3rd Street when Brown was arrested by Officers Hazzard and Rinehart.  Ms. Grier indicated that Brown was intoxicated at the time he was arrested. She confirmed that Brown was on the front porch, yelling.  According to Ms. Grier, the officers told Brown to get down on the ground, but when "he did not move fast enough... they tackled him to the floor of the front porch."  Ms. Grier indicated that Brown and the officers continued to "wrestle" on the ground, and one of the officers "maced" Brown.  Ms. Grier stated that at that point, the officers were able to pick Brown up off the floor and place him in the police car.  She also advised Sergeant Drysdale that she had heard one of the officers tell Brown to stop resisting and place his hands behind his back.  (A-5)

After completing all interviews, Sergeant Drysdale concluded that Officers Hazzard and Rinehart's use of non-lethal force was reasonable and justified.  (A-5-6)

6

## ARGUMENT

## STANDARD OF REVIEW

The Court must grant summary judgment if it determines that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), *cert denied*, 484 U.S. 1066 (1988), and Arnold Pontiac-GMC, Inc. v. General Motors Corp., 786 F.2d 564, 568 (3d Cir. 1986). "In considering a motion for summary judgment, a court does not resolve factual disputes or make credibility determinations, and must view the facts in the light most favorable to the non-moving party." Nelson v. Walsh, 60 F. Supp. 2d 308, 311 (D.Del. 1999), citing Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1127 (3d Cir. 1995). The moving party bears the burden of proving that no genuine issue of material fact is in dispute. *See* Matsushita Electric Industries Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 N.10, (1986). However, "[t]he moving party is not required to negate the non-movant's claim, but is only required to point out the lack of evidence supporting the non-movant's claim." Carrigan v. State, 957 F. Supp. 1376, 1381 (D. Del. 1997); *see also* Big Apple BMW, Inc., et al. v. BMW of North America, Inc., et al., 974 F.2d 1358, 1362 (3d Cir. 1992). Simply stated, summary judgment is appropriate "where admissible evidence fails to demonstrate a genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Nelson, 60 F. Supp. 2d at 311.

Once the moving party puts forth a properly supported motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). If the non-

7

moving party cannot produce "concrete evidence from which a reasonable [trier of fact] could return a verdict in [his] favor," then summary judgment for the movants must be granted. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986). "The mere existence of some evidence in support of the non-moving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the non-moving party on that issue." <u>Lamb-Bowman v. Delaware State Univ.</u>, 152 F.Supp.2d 553, 557-558 (D. Del. 2001), citing <u>Anderson</u>, 477 U.S. at 249.

A dispute regarding a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Wayne v. Borough of West Chester</u>, 891 F.2d 458, 459 (1989). Indeed, the non-movant must provide "significant probative evidence tending to support the complaint." <u>Anderson</u>, 477 U.S. at 249. The moving party "may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden of proof at trial." <u>Chipollini v. Spencer Gifts, Inc.</u>, 814 F.2d 893, 896 (3d Cir. 1987); Celotex Corp., 477 U.S. at 322 (holding that Rule 56 requires summary judgment when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

In sum, summary judgment serves to "avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense." <u>Fraser v. Pennsylvania State System of Higher Education, et al.</u>, 1994 U.S. Dist. LEXIS 7409, *8 (E.D. Pa. June 6, 1994), citing <u>Goodman v. Mead Johnson & Co.</u>, 534 F.2d 566, 573 (3d Cir. 1976).

I.    **DEFENDANT DRYSDALE HAD NO PERSONAL INVOLVEMENT IN PLAINTIFF'S ARREST. THEREFORE, PLAINTIFF CANNOT MAINTAIN A CAUSE OF ACTION UNDER §1983 AGAINST DEFENDANT DRYSDALE.**

In order to prevail on a claim for damages for a constitutional violation pursuant to 42 U.S.C. §1983, Plaintiff must establish that Defendant Drysdale acted under color of state law and caused or contributed to the alleged constitutional violation.    West v. Atkins, 487 U.S. 42, 48 (1988). Specifically, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior."    Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d cir. 1988).    Stated differently, "a plaintiff must allege and prove a causal connection between the defendants and the alleged wrongdoing in order to recover." Id. at 1207.    Plaintiff may establish such a causal connection  by demonstrating that the defendant was personally involved in the alleged deprivation of his or her constitutional rights through allegations of either personal direction or actual knowledge and acquiescence.    Id.; Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

In the present matter, there is no evidence in the record, other than Plaintiff's unsupported allegation, that Defendant Drysdale participated in his arrest, used any force against Plaintiff or was even present at 1627 West 3rd Street.    Indeed, Plaintiff's Complaint does not indicate what specific actions Defendant Drysdale undertook which allegedly violated Plaintiff's constitutional rights. Rather, he lumps both Sergeant Drysdale and Officer Rinehart together under the term "defendants." (D.I. 2 ).

Both Defendant Rinehart and Officer Hazzard state that Defendant Drysdale was contacted subsequent to Plaintiff's arrest.  (A-2, 16, 19).  Defendants Drysdale and Rinehart and Officer Hazzard state that Defendant Drysdale's role in this matter was limited to investigating the officers'

use of non-lethal force (the deployment of cap stun).  (Id.).  The two reports issued in connection with this matter, the crime report and the defensive tactics report, support the fact that Defendant Drysdale had no contact with Plaintiff until he attempted to interview him at the hospital emergency room.  (A-1-7).  Given this fact, Plaintiff cannot establish that Defendant Drysdale was personally involved in the actions which Plaintiff alleges violated his constitutional rights.  As such, Plaintiff cannot maintain a cause of action under §1983 against Defendant Drysdale, and summary judgment in favor of Defendant Drysdale is warranted.

## II.    DEFENDANT RINEHART IS ENTITLED TO QUALIFIED IMMUNITY FOR THE ACTIONS HE UNDERTOOK IN PLAINTIFF'S ARREST. THEREFORE, HE CANNOT BE HELD LIABLE UNDER §1983.

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The privilege is "an immunity from suit rather than a mere defense to liability, and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."   Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  Consequently, the United States Supreme Court has repeatedly stressed that immunity questions must be decided at the earliest possible stage of litigation.   Hunter v. Bryant, 502 U.S. 224, 227(1991).  Whether a governmental official is entitled to qualified immunity is often a legal question and "particularly amenable to resolution on summary judgment." Beckwith, 2001 U.S. Dist. LEXIS 24079 at *8, citing Rogers v. Powell, 120 F.3d 446 (3d Cir. 1997) and Acierno v. Cloutier, 40 F.3d 597 (3d Cir. 1994); see also, Siegert v. Gilley, 500 U.S. 226, 233 (1991).  One of the purposes of qualified immunity is to protect public officials from  disruptive, "broad-ranging"

discovery.  <u>Anderson v. Creighton</u>, 483 U.S. 635, 646 n.6 (1987).

In the context of determining whether qualified immunity applies, the Court must first consider the threshold question of whether Plaintiff has demonstrated a violation of an actual constitutional right.  <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).  The constitutional issue in the present matter is whether Defendant Rinehart used an unreasonable amount of force during Plaintiff's arrest in violation of the Fourth Amendment.  The answer to this question must necessarily be "no," for in order to carry his burden of proof on an essential element of his case and demonstrate an actual violation of the Fourth Amendment, Plaintiff must adduce evidence from the record demonstrating that Defendant's actions were objectively unreasonable under the totality of the circumstances surrounding Plaintiff's arrest.  For the reasons discussed more fully below, Plaintiff is unable to adduce sufficient facts to permit a reasonable trier of fact to find in his favor on this issue.

Given that Plaintiff's excessive force claim arises in the context of an investigatory stop or arrest, as here, the Court must construe the Complaint as "one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons... against unreasonable... seizures' of the person."  <u>Graham v. Connor</u>, 490 U.S. 386, 394 (1989).  As such, Plaintiff's Complaint must be analyzed under the "reasonableness" standard of the Fourth Amendment.  <u>Id.</u> at 395.  Therefore, Plaintiff's argument that the Eighth Amendment standard is applicable to this case is erroneous.

In order to prevail on an excessive force claim where an individual alleges a violation of the Fourth Amendment, it must be demonstrated that the police officer's use of force was not "objectively reasonable."  <u>Id.</u> at 397.  The specific inquiry is "whether the officers' actions are

11

'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 457. "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." Id., citing Scott v. United States, 436 U.S. 128, 138 (1978) and United States v. Robinson, 414 U.S. 218 (1973).

The reasonableness of a particular use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id., citing Terry v. Ohio, 392 U.S. 1, 20-22 (1968). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers" violates the Fourth Amendment. Id., citing Johnson v. Glick, 481 F.2d 1028, 1033 (1973). Certainly with the benefit of hindsight one could opine that the police officer should have been able to arrest an individual in a less forceful manner. However, in an excessive force claim, the calculus of reasonableness is not hindsight, but rather "reasonableness at the moment," and it "must embody allowance for the fact that police officers are often forced to make split second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Id. at 396-397; see also, Beckwith v. Sherwood, 2001 U.S. Dist. LEXIS 24079, at *14 (E.D. Pa. October 11, 2001).

The question of whether the force used to effect an arrest requires the Court to balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against "the countervailing governmental interests at stake." Id. at 396. The Courts have long recognized that the right to make an arrest or investigatory stop carries with it the right to use some degree of physical force, or the threat thereof, to effect it. Id. "The degree of force is dictated by the suspect's behavior." Clark v. Condon, 2002 U.S. Dist. LEXIS 17831, *7 (September 20, 2002). "The test of

12

reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," but rather requires the Court to analyze the facts and circumstances of each particular case. Graham, 490 U.S. at 396, quoting Bell v. Wolfish, 441 U.S. 520, 559 (1979).

To that end, the Court must consider several factors in making its determination, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he actively is resisting arrest or attempting to evade arrest by flight,... as well as the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether  the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time."   Smith v. Marasco, 318 F.3d 497, 515 (3d Cir. 2003)(internal citations omitted).  The test then is whether the totality of the circumstances justified the particular force used.  Tennessee v. Garner, 471 U.S. 1, 8-9 (1985).

In the present matter, the evidence of record, specifically the officers' affidavits and police reports, together with the statement of Plaintiff's girlfriend, Ms. Grier, establish that the Plaintiff was intoxicated that evening, his behavior was disorderly and disruptive, the officers were attempting to place him under arrest, Plaintiff was resisting arrest by struggling with the officers, and the officers attempted to use verbal commands to bring Plaintiff under control.  (A-5).  Given these facts, Defendant Rinehart and Officer Hazzard were forced to utilize a certain degree of force to effect Plaintiff's arrest.  Of significance is the fact that Defendant Rinehart and Officer Hazzard followed the prescribed use of force continuum as contained in the Wilmington Police Directives in attempting to control Plaintiff: officer presence, verbal warnings/commands, hands on control, and lastly, non-lethal intermediate weapon in the form of cap stun. (A-9).  Additionally, the only force

utilized by Defendant Rinehart is physically struggling with Plaintiff to pull his hands from beneath his body and kneeing Plaintiff once in the thigh.   Only Officer Hazzard, who is not a party to Plaintiff's suit, utilized cap stun.  As such, Plaintiff cannot attribute the use of cap stun to Defendant Rinehart.  (A-2, 4, 15-19).   Additionally, it was Officer Hazzard, not Defendant Rinehart, who initially pulled Plaintiff to the ground.  (A-2, 15).  See, Nardini v. Hackett, 2001 U.S. Dist. LEXIS 15896, *19-20 (E.D. Pa. September 19, 2001)(held that summary judgment appropriate when the record does not support Plaintiff's allegations that she was "brutally beaten and assaulted" by defendant officers and provides no evidence that defendant officers used anything more than necessary force).

Lastly, the record evidence demonstrates that Plaintiff suffered minor injuries, consisting of an abrasion to his head and irritation to his eyes, thereby supporting a conclusion that the force utilized was reasonable.  (D.I. 21 - medical records from Wilmington Hospital dated April 16, 2006 filed under seal).  Nelson, 60 F.Supp. 2d at 315 ("Although the Plaintiffs need not prove permanent or severe injury in order to maintain an excessive force claim, the severity of the resulting injury is a factor to be considered in determining whether the force used was unreasonable, and thus, excessive"), citing Mellott v. Heemer, 161 F.3d 117, 122 (3d Cir. 1989)(a factor to consider in determining whether the force used was unreasonable is whether "the physical force applied was of such an extent as to lead to injury."); Chambers v. John Doe, 453 F. Supp. 2d 858, 866-867 (D. Del. 2006). See also, Metcalf v. Long, 615 F. Supp. 1108, 1121 (D. Del. 1985)(held that in an excessive force case brought under the Fourteenth Amendment there is no constitutional violation where the injury is minor; mere assault and battery does not rise to the level of a constitutional violation); Bensinger v. Mullen, 2000 U.S. Dist. LEXIS 11012, *5 (E.D. Pa. August 4, 2000), citing Ingraham

14

v. Wright, 430 U.S. 651, 674 (1977); Nardini, 2001 U.S. Dist. LEXIS 15896 (E.D. Pa. September 19, 2001)(granting summary judgment where minimal amount of force used); Beckwith v. Sherwood, 2001 U.S. Dist. LEXIS 24079, *12 (E.D. Pa. October 11, 2001)(granting summary judgment where the use of force was de minimis).

The record supports a finding that, under the totality of the circumstances, Defendant Rinehart's actions were objectively reasonable given the situation he faced.  The Court has repeatedly stressed that investigatory stops are fraught with danger for police officers.  United States v. Kithcart, 218 F.3d 213, 219 (3d Cir. 2000); United States v. Padilla, 1997 U.S. Dist. LEXIS 3911, *16 (E.D. Pa. March 31, 1997); United States v. Hernandez, 872 F. Supp. 1288, 1294-1295 (1994). In this case, given Plaintiff's disorderly behavior, Plaintiff's attempt to flee when the officers approached him on the porch, Plaintiff's refusal to heed the officers' repeated verbal commands (first, to calm down and go inside the residence, and then to stop resisting arrest), Plaintiff's refusal to stop resisting when Officer Hazzard stated he was going to use cap stun, Plaintiff's continued resistance after the cap stun was administered by Officer Hazzard, and the lack of serious physical injury, the force utilized by Defendant Rinehart (kneeing Plaintiff in the thigh) was objectively reasonable and does not constitute a violation of Plaintiff's Fourth Amendment rights.  As such, Defendant Rinehart is entitled to judgment as a matter of law.

However, assuming *arguendo* that the Court concludes that Plaintiff has demonstrated a violation of the Fourth Amendment, the Court must next address the second part of the qualified immunity analysis, i.e., whether the constitutional right at issue was clearly established.  Saucier, 533 U.S. at 201.  This inquiry is essential and "must be undertaken in light of the specific context of the case, not as a broad general proposition;... it too serves to advance understanding of the law and to

15

allow officers to avoid the burden of trial if qualified immunity is applicable." Id. When a court denies summary judgment any time a material issue of fact remains on the excessive force claim, it undermines the goal of qualified immunity, specifically, "to avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment... If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." Id. at 282 (internal citations omitted). A right is "'clearly established' when the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). Therefore, the relevant, dispositive inquiry in determining whether a right is "clearly established" is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202.

Even if the Court finds that the amount of force was unreasonable, Defendant Rinehart is entitled to qualified immunity if reasonable officers in his position could conclude that Defendant Rinehart's actions were reasonable. "If on an objective basis 'it is obvious that no reasonably competent officer would have concluded that [the actions were lawful],' defendants are not immune from suit; however, 'if officers of reasonable competence could disagree on this issue, immunity should be recognized.'" Sanders v. Workman, 2001 U.S. Dist. LEXIS 9053, *10 (D. Del. March 26, 2001), citing In re City of Philadelphia Litig., 49 F.3d 945, 961-962 (3d Cir. 1995). "An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense." Saucier, 533 U.S. at 202.

16

In the present matter, Defendant Rinehart's actions with regard to the arrest of Plaintiff were investigated and reviewed by his supervisor, Defendant Drysdale. After interviewing Defendant Rinehart, Officer Hazzard and Ms. Grier, Defendant Drysdale determined that the officers' use of force was reasonable and justified, and consistent with Wilmington Police Department regulations. (A-3-8).

Given the above, Plaintiff fails to raise a genuine issue of material fact with regard to the constitutionality of Defendant Rinehart's specific actions. Where a defendant asserts a qualified immunity defense, a plaintiff bears the initial burden of demonstrating that a defendant violated a clearly established constitutional right. Donohue v. Gavin, 280 F.3d 371, 378 (3d Cir. 2002). Even reading the facts in a light most favorable to Plaintiff, a reasonable trier of fact cannot conclude that Defendant Rinehart used an unreasonable amount of force against Plaintiff when Plaintiff was clearly resisting arrest. The only "force" attributable to Defendant Rinehart is a "stun blow" delivered with his knee to Plaintiff's thigh when Plaintiff continued to resist arrest after Officer Hazzard attempted to gain compliance by spraying Plaintiff with cap stun. Given these facts, Plaintiff cannot demonstrate that the de minimis force used to arrest him was unreasonable under the circumstances. As such, Plaintiff cannot meet his burden of proof under Fourth Amendment law as it relates to Defendant Rinehart. Further, even if the Court were to conclude that the record demonstrates a deprivation of a viable constitutional right, this right is not clearly established under the specific factual circumstances known to Defendant Rinehart. Therefore, the record supports a finding that Defendant Rinehart is entitled to qualified immunity with respect to Plaintiff's allegations, and the Court must grant summary judgment as a matter of law.

## CONCLUSION

For the reasons set forth above, Defendants Drysdale and Rinehart respectfully move this

Honorable Court to grant their motion for summary judgment and dismiss Plaintiff's Complaint.

 

/s/ Rosamaria Tassone
Rosamaria Tassone (I.D. #3546)
City of Wilmington Law Department
Louis L. Redding City/County Building
800 French Street, 9th Floor
Wilmington, Delaware 19801-3537
(302) 576-2175
Attorney for Defendants

Dated:  March 7, 2008

18

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROBERT D. BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-23 (SLR) |
| | ) | JURY OF 12 DEMANDED |
| WILMINGTON POLICE OFFICER RINEHART, | ) | |
| WILMINGTON POLICE OFFICER DRYSDALE, | ) | |
| | ) | |
| Defendants. | ) | |

### NOTICE OF SERVICE

I, Rosamaria Tassone, Esquire, hereby certify that on this 7th day of March, 2008, I electronically filed Defendants' Opening Brief in Support of Their Motion for Summary Judgment with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following and that these documents are available for viewing and downloading from CM/ECF. A copy of the document was mailed to the following individual:

Robert D. Brown
Inmate Number 231393
Howard R. Young Correctional Institution
P.O. Box 9561
Wilmington, DE 19809

    /s/ Rosamaria Tassone
Rosamaria Tassone (I.D. #3546)
City of Wilmington Law Department
Louis L. Redding City/County Building
800 French Street, 9th Floor
Wilmington, Delaware 19801-3537
(302) 576-2175

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

ROBERT D. BROWN,                                )
                                                )
                    Plaintiff,                  )
                                                )
v.                                              )        C.A. No. 07-23 (SLR)
                                                )        JURY OF 12 DEMANDED
WILNIINGTON POLICE OFFICER RINEHART,            )
WILNIINGTON POLICE OFFICER DRYSDALE,            )
                                                )
                    Defendants.                 )


**APPENDIX TO DEFENDANTS' OPENING BRIEF IN SUPPORT**
**OF THEIR MOTION FOR SUMMARY JUDGMENT**


Rosamaria Tassone (I.D. #3546)
City of Wilmington Law Department
Louis L. Redding City/County Building
800 French Street, 9th Floor
Wilmington, Delaware 19801-3537
(302) 576-2175

Dated:   March 7, 2008

## **TABLE OF CONTENTS**

Wilmington Police Department - Initial Crime Report  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  A-1

Wilmington Police Department  - Defensive Tactics Report  . . . . . . . . . . . . . . . . . . . . . . . . .  A-3

Handwritten notes of Defendant Drysdale . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  A-7

Wilmington Police Department - Directive 6.7 - Use of Force/Departmental Weapons . . . . .  A-8

Wilmington Police Department - Directive 7.9 - Use of Force . . . . . . . . . . . . . . . . . . . . . . .  A-10

Affidavit of John R. Drysdale  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  A-12

Affidavit of Matthew Hazzard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  A-14

Affidavit of Michael Rinehart  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  A-17

**Initial Crime Report**

| Reported Date and Time | | Occurred: |
|---|---|---|
| SUN 04/16/2006 0522 | | SUN 04/16/2006 0521 |

Location:
**1627 W 3rd ST**    Wilmington, DE 19805

M.O. and Incident Overview:
Def did use loud abusive language which disturbed the surrounding residents.

| Grid | Sedor | County | Domestic Related | 4-F-14 Sent? | Gen Broadcast Sent? |
|---|---|---|---|---|---|
| 230-100 | 18 | New Castle | ☐Yes ☒No | ☐Yes ☒No | ☐Yes ☒No |

## Victim Information

| Victim Number | Name |
|---|---|
| 001 | |

| Type | Sex | Race | | | Ethnic Origin | Age | D.O.B. |
|---|---|---|---|---|---|---|---|
| Society/Public | | | | | | | |

| Address | | Resident Status | Home Telephone | Cell Phone |
|---|---|---|---|---|

| Reporting Person? | Victim Injured? | Victim Deceased? | Officer Comments |
|---|---|---|---|
| ☐Yes ☒No | ☐Yes ☒No | ☐Yes ☒No | |

| Injuries | Description of Injuries |
|---|---|

## Suspect/Defendant Information

| Sequence | Type | SBI Number | Name | Nick Name |
|---|---|---|---|---|
| 001 | Defendant | 00231393 | BROWN, ROBERT D | |

| Sex | Race | Ethnic Origin | Age | D.O.B. | Height | Weight | Skin Tone | Eye Color |
|---|---|---|---|---|---|---|---|---|
| | Black | Non-Hispanic | 31 | 04/14/1975 | 5'09'' | 160 | Light Brown | Brown |

| Hair Color | Hair Length | Hair Style | Facial Hair | Voice Speech | Teeth | Build | Glasses |
|---|---|---|---|---|---|---|---|
| Black | | | | | | | |

| Disguise | Disguise Color(s) | Resident Status | Unusual Characteristics | Armed With |
|---|---|---|---|---|
| | | Full Time | | Unarmed |

| Address | Home Telephone | Cell Phone |
|---|---|---|
| 1627 W 3rd ST Wilmington, DE 19805 | (302) 312-4148 | |

| Arrest Number | Arrest Type | Suspect's Clothing Description |
|---|---|---|
| 06001825 | On View | |

| Employer/School | Work Telephone |
|---|---|
| UNEMPLOYED | |

## Crimes and Associated Information

| Victim Number | Crime Seq | Statute | Crime Description |
|---|---|---|---|
| 001 | 001 | DE:11:1301:001B:M: | Disorderly Conduct - Noise Offensive Utterance Gesture Display Abusive Language |

| Location Of Offense | Status | Involvement | General Offense |
|---|---|---|---|
| Highway/Roadway/Alley/Street | Adult Arrest 04/16/2006 | ☐Alcohol ☐Drugs ☐Computer | |

| Suspected Hate/Bias | Crime Code |
|---|---|
| ☐Yes ☒No - N/A | 011 - Disorderly Conduct/Unrelated to Liquor |

Burglary Force Involved ☐Yes ☐No

| Victim Number | Crime Seq | Statute | Crime Description |
|---|---|---|---|
| 001 | 002 | DE:11:1257:0000:M:A | Resisting Arrest |

| Location Of Offense | Status | Involvement | General Offense |
|---|---|---|---|
| Highway/Roadway/Alley/Street | Adult Arrest 04/16/2006 | ☐Alcohol ☐Drugs ☐Computer | |

| Suspected Hate/Bias | Crime Code |
|---|---|
| ☐Yes ☒No - N/A | 4801 - Resisting Arrest |

Burglary Force Involved ☐Yes ☐No

## Victim - Suspect/Defendant Relationships

A-1

| Victim - 001 | Suspect/Defendant - 001 | Victim Offender Relationship |
|---|---|---|
| Society/Public | BROWN, ROBERT D | Victimless Crime |

## Investigative Narrative

On **16 April 2006** at approx. **0520** hours unit **18-E** (Rinehart/Hazzard) while on proactive patrol in the **1600** block of W. 3rd St. observed several subjects standing on the porch of **1627** W. 3rd St. It should be noted that this location is in the City of Wilmington, County of New Castle and the State of Delaware. It should be further noted that these officers are both sworn members of the City of Wilmington Police Department. Upon approaching the above named residence in their marked patrol car an unknown black male subject (Brown, Robert, BMNH, **04-14-1977** herein known as the **def**) started yelling at these officers and using abusive language. These officers having not said anything to the def advised the def that he needed to relax to which the def responded "fuck you, I'm on my own porch, what you gonna do". These officers again reminded the def to calm down and take himself inside for the remainder of the night to which the def responded "I'm gonna call my lawyer, fuck you, I'm at my own house".

| Reporting Officer | Supervisor Approval |
|---|---|
| PTLM RINEHART - 7411 2 | JOHN R DRYSDALE OJWIJRD Date 05/08/2006 0611 |

## Investigative Narrative - Continued

After numerous other uses of  loud profane language, which was causing an unnecessary disturbance in the area attracting surrounding citizens to look out the windows of their residences these officers exited their vehicle and started to approach the def who immediatly tried to run inside 1627 W. 3rd St.  **Ofc.** Hazzard advised the def to stop, but the def continued to try to gain access to the above address. Ofc Hazzard was able to grab the **def's** jacket and pull the def back out onto the porch whereupon the def began resisting by laying o his hands and refusing to bring his hands after being told numerous times by these officers t stop resisting. The def still disobeyed these officers orders to stop resisting and continued to lay on his hands in a manner that these officers were unable to gain control of same. **Ofc.** Hazzard advised the subject that he was under arrest and going to get sprayed to which the de responded "I didn't even do nothing". **Ofc.** Hazzard deployed his departmentally issued capstan and sprayed the def in the face and head area, which resulted in the def releasing his left hand. This officer was able to gain control of the **def's** left hand, but was unable to gain control of the **def's** right hand. These officers gave the def two stun blows one to the head which was delivered with the heel of **Ofc.** Hazzards hand and one to the right thigh **area,which** was delivered by this officers right knee, which resulted in the def releasing his right hand and being placed into custody by these officers.


The def was transported to Wilmington E.R. where he received treatment for his face and head area, along with a small abrasion to the left side of his head. The **def's** eyes were f?ushed with copious amounts of water and the attending **physician(Dr. Hong)** accessed the smal a??asion to the defs head. E-2 **(Drysdale)** also responded to the **Wilmington** E.R where he was able to interview the def in regards to these officers actions. The def was subsequently released from the Wilmington E.R. and transported to central whereupon he was booked on the above enumerated charges.  The def was turned over to the turnkey for processing.


A-2

| Reporting Officer | | Supervisor Approval | |
|---|---|---|---|
| PTLM RINEHART  - 7411 2 | | JOHN R DRYSDALE  OJWIJRD  Date 05/08/2006 0611 | |
| Detective Notified | | Referred To | |

| Solvability Factors | ☐ Witness | ☐ M.O. | ☐ Trace Stolen Property | ☐ Suspect Named | Status |
|---|---|---|---|---|---|
| | ☐ Suspect Located | ☐ Suspect Described | ☐ Suspect Identified | ☐ Suspect Vehicle Identified | Has Follow Up |

# Wilmington Police Department
## *Defensive Tactics Report*

Date of Incident:  **4/16/2006**                    Case Number:        **30-06-35961**

Time of Incident:  0522                         OPS Number:

Location of Incident:   1627 W. **3rd,** Street, Wilmington, DE

Original Complaint:   Drugs ☐  Domestic ☐  Burglary ☐  **D/C** ☐  Traffic ☐  Sex Offense ☐
Shooting ☐  Other:

Type of Police Defensive Tactics Taken:    Baton Strike ☐  Hands ☐  Feet ☐  Push ☐  Tackle ☒
Other :

Equipment Utilized:   Cap Stun ☐  ASP ☐  Nightstick ☐  Other : <u>N/A</u>

Officer's Name: <u>Ptlm. Matt Hazzard, Ptlm. Michael Rinehart</u>

   Describe Injury, if any, and treatment required: **<u>N/A</u>**

   Hospital: **<u>N/A</u>**          Doctor: <u>N/A</u>

Officer's Name: **<u>N/A</u>**

   Describe Injury, if any, and treatment required: <u>N/A</u>

   Hospital: **<u>N/A</u>**          Doctor: <u>N/A</u>

Suspect # 1 Information:   Name:  <u>Robert Brown</u>                    DOB:    <u>4/14/1975</u>
                     Address: 1627 W. **3rd** Street, Wilmington    Phone   <u>3023124148</u>
                     Sex:  **<u>M</u>**   Race:  <u>Black</u>      Height:  <u>5'-09"</u>   Weight:  **<u>160</u>**
                     Injuries Sustained: <u>Chemical Conjunctivitis & Abrasion to Scalp</u>
                     Hospital: **<u>Wilmington</u>**          Doctor:  <u>Rick **Hong** M.D.</u>
                     Impairment due to alcohol or drugs:  Yes

Weapon **Utilized** by Suspect # **1:**  **Baton/Bat** ☐  Knife ☐  Firearm ☐  Hands ☐  Feet ☐
          **O**ther: _____

Suspect # 2 Information:   Name:  **<u>N/A</u>**                    DOB:    **<u>N/A</u>**
                     Address: N/A                        Phone   **<u>N/A</u>**
                     Sex:  **<u>M</u>**   Race:  <u>White</u>      Height:  <u>N/A</u>   Weight:  **<u>N/A</u>**
                     Injuries Sustained: **<u>N/A</u>**
                     Hospital: <u>N/A</u>          Doctor: **<u>N/A</u>**
                     Impairment due to alcohol or drugs:  No                **A-3**

Weapon Utilized by Suspect # 2:  **Baton/Bat** ☐  Knife ☐  Firearm ☐  Hands ☐  Feet ☐
          Other: <u>N/A</u>

On Sunday, 4/16/06, at approximately 0520 hours, officers Hazzard and Rinehart while on routine patrol in the 1600 block of W. 3rd Street, observed several subject standing on the front porch of 1627 W. 3rd Street.  As Officers Hazzard and Rinehart approached this location and traveling east on 3rd Street, the above subject known here and after as Robert Brown started yelling at the officers. The other subjects dispersed from the area. The Officers who had not spoken to Robert Brown prior nor did they know him confronted the subject about the noise violation. It was at this time his response was "Puck You, I'm on **my** own porch, what **you** gonna do". It should be noted the officers conducted this conversation from the police vehicle.

The officers advised Robert Brown a second time to calm down and to go in the house. Robert Brown continued to be abnormally loud and refused to stop utilizing loud profanity toward the officers. **It** should be noted due to Brown's actions several neighbors heard the **ongoings** of the incident thus initiating concern, **causing** citizens to observe from their windows. Robert Brown then stated **"I'm gonna** call **my** lawyer, fuck you, I'm at my own house". It should be noted that this portion of the interview was conducted from the police vehicle as Robert Brown was on the front porch.

After telling Robert Brown numerous times to quite down the officers exited their marked police **vehicle** and informed him he was under arrest for disorderly conduct. Robert Brown then attempted to **run** into 1627 W. 3rd Street. Officer Hazzard commanded him to stop, however, Mr. Brown refused and was grabbed by his jacket. At this time Robert Brown attempted to pull away from Officer Hazzard and he was immediately taken to the ground. Robert Brown placed his arms under his body in an attempt to deny the officers from placing handcuffs on him. The officers commanded Robert Brown numerous times to stop resisting and for him to give them his hands. After refusing the officers orders Robert Brown was advised to stop **resisting** arrest or he was going to be sprayed with pepper spray. Still **disobeying** the commands of the officers, Ptlm. Matt Hazzard deployed his departmental issued canister of Oleoresin Capsicum (Cap Stun). The Cap Stun was administered to Robert **Brown's** face and head area. This action taken by **Ofc.** Hazzard abled him to gain control of the defendants left arm, however, Robert Brown still resisted arrest refusing to give up his right arm. While attempting to gain **controll** of Robert Brown who still refused to **comply** with the commands of the officers by flailing his body on the **floor** of **the unlit porch** Officer Hazzard **with th** palm o  his **hand stuck** the subject on the   **ft** side **of h**is head, Officer Rinehart with his knee struck the subject to the right thigh area. This action taken by the officers initiate the subjects response to stop resisting and comply to the commands.  **During** this **alt**ercation it was discovered that Robert Brown was extremely intoxicated.

Robert Brown was then transported to the Wilmington Hospital where he was treated for his sustained **injuries. For** further details see a **copy** of the provided Medical Discharge papers.

(For officers actions see reports under case numbers assigned to incident)

Statement of Suspect #1:

On 4/16/06, at approximately 0600 hours, this Investigator responded to the Wilmington Hospital **regarding** a use of force incident **invoving 18E (Ptlm.** Matt Hazzard & Ptlm. Michael Rinehart) and defendant (Robert D. Brown, **BM31, 4/14/1975)**

Upon my arrival at the hospital **I** was directed to Mr. Robert D. **Browns'** location. It was at this time **I** attempted to conduct an interview with Mr. Brown by first identifying myself. I then asked Robert Brown what happened? Robert Brown advised "You know what happened, fuck you, your one of **them."It** was observed during this interview that Robert Brown had been cap stunned. It was further

observed that Robert Brown was intoxicated. This Investigator asked Robert Brown if he had been drinking at which time he advised **"Yes** whats that **got** to do with **anything."** This investigator asked Robert Brown if he wanted to make a complaitnt at which time he told me a second time "Fuck you will **see."** This interview was concluded at approximately 0620 hours.

Statement of Suspect #2: N/A


Witness # 1:  Name:    Kimberly Grier                    Phone:    302-312-4148
Address:    515 N. Franklin Street, **Wilmington,** DE
Related to Suspect:    _____        If yes, indicate relation:    N/A
Statement:  _____

    On **2/10/07,** at approximately 1255 hours. this investigator conducted a telephone **(302-312-4148)** interview with Kimberly Grier, 1/5/82. Kimberly Grier advised at the time of this incident she stayed with Robert D. Brown at 1627 W. **3**rd Street. Kimberly Grier advised she still talks to Robert Brown, **however,** since his incarceration at Gander Hill Prison she considers him an ex-boyfriend.  Kimberly Grier advised on 4/16/07, Brown was extremely intoxicated and is usually calm when he has been drinking. Kimberly Grier advised Brown had been drinking all **night** long. Kimberly Brown advised that **Robert was outside** on th  front porch **yelling. Kimberly Br        advised** the police arr       an  told Robert to get down on the ground, however, he did not move fast enough so they tackled him to the floor of the front porch.  When they were wrestling on the **ground** one of the officers **Maced** Brown in the face. The officers then picked him up off the floor and took him to the police car.
    Kimberly Grier stated that she did overhear one of the officers tell Robert Brown to **stop** resisting and put his hands behind his back.
    Kimberly Grier advised she saw Robert Brown later during the day and a photograph of his **injuries** was **taken.** Kimberly Grier advised she witnessed this incident from the front porch area. Kimberly Grier advised at the time of this incident she was pregnant but was not effected **by** the Mace.


Witness # 2:  Name:    _____                    Phone:    N/A
 dress:    N/A
Related to Suspect:    _____        If yes, indicate relation:    N/A
Statement:  N/A


Investigate / Conclusion:                                                        A-5

    **At approximately 0600 hours,** this investigator responded to **the Wilmington Hospital** in an        ᴐ to interview Robert Brown. Once at the hospital I attempted to speak with Robert Brown about his injuries, however, he became extremely disorderly accusing me as being one of the officers involved in his arrest. Even after **I** explained that I was not involved in his arrest and **I** was a Sergent Supervisor investigating the incident he continued his verbal assault. It was at this time **I** concluded the interview.
    The officers accounts and the reports that they submitted were all consistent.  It appears that the officers **ctions** were justified and I see no **violation** of **Wilmington Police Directives** regarding   s  of force. specifically Directive 6.7 (V) (B) 2, **wich** states that an officer is authorized to use non-deadly force techniques to restrain or subdue an actively resisting individual.  This case can be considered "Closed **Proper** Conduct" and no further investigation is needed.

**Investigating Supervisor: <u>Sgt. John Drysdale E-6279</u>**

**Immediate Supervisor: <u>Sgt. John Drysdale E-6279</u>**

4/16/06, 0608          Hazzard/Rinehart.

W/mington  Hsptal - Use of tire Spray "Cap Stun"

Robert Brown      4/14/75

— You, know what happened.
— Fuck you
—   Your one of them
—   Observed possibly intoxicated - Smell of Alcohol
—  Adwsd he was drinking.
—  Fuck you, you will See.

0620 Hrs

A-7

# USE OF FORCE/DEPARTMENTAL WEAPONS

<u>Directive</u>: 6.7

I.  Purpose:

The purpose of this directive is to establish a uniform policy that will provide members of this Department with guidelines on the use of deadly, less than lethal force and non-deadly force.

II.  Policy:

This Department recognizes and respects the value and special integrity of each human life. The value of human life is immeasurable in our society. Police officers have been delegated the ultimate responsibility to protect life and property and to apprehend criminal offenders. The apprehension of criminal offenders and the protection of property must, at all times, be secondary to the protection of life. The officer's responsibility for protecting life must include his or her own.

In vesting police officers with the lawful authority to use force to protect the public welfare, a careful balancing of all human interests is required. Therefore, it is the policy of the Wilmington Police Department to use the minimal degree of force that is reasonably necessary to effectively bring an incident under control while protecting the lives of the officer or another.

III. Definitions:

1.  Deadly force:

Any use of force that is likely to cause death or serious bodily injury, or which creates some degree of risk that a reasonable prudent person would consider likely to cause death or serious bodily injury.

2.  Non-deadly force and less than lethal force:

Any use of force other than that which is considered deadly force.

3.   Reasonable Belief:

The facts or circumstances the officer knows, or should know, are such as to cause an ordinary and prudent person to act or think in a similar way under similar circumstances.

4.   Serious Physical Injury:

That which creates a substantial risk of death, or which causes serious and prolonged disfigurement, prolonged impairment of health or prolonged loss or impairment of the function of any bodily organ.

IV.  Continuum:

The use of force should follow a prescribed continuum: physical presence, verbal warning, verbal command, hands-on control, hands-on counter measures, intermediate weapon (which includes the choice of a chemical weapon, Asp baton),and finally, if necessary, the use of deadly force.

However, members should be mindful that the force needed to control an incident may not fall on the prescribed continuum sequentially in all circumstances. Therefore, members should use their discretion to quickly and safely apply the necessary level of force to meet situations involving arrest, safety of citizens or officer self-defense.

V.   Procedure:

A.   Parameters for use of deadly force:

1.   **An** officer is authorized to un-holster his pistol whenever he has reasonable suspicion to believe that he or anyone in his immediate vicinity is in imminent danger or physical harm.

2.   If feasible, prior to using a firearm, the officer shall identify himself as a police officer and shall give warning.

3.   An officer is authorized to use deadly force if the officer has probable cause to believe that the suspect poses an imminent threat of serious physical harm to the officer or others.

4.   An officer may use deadly force to prevent the

# USE OF FORCE.

## A. Use of Physical Force

The **use** of **physical force** shall **be restricted to the** circumstances specified by Law (Title **11,** Section' 467) when necessary to accomplish.a **police** task successfully:

1. **Unnecessary** Force resulting in **"serious physical injury"** as defined in Title 11, **Section** 222 will result in 'disciplinaryaction as **specified** for a **class** A violation.

2. Unnecessary **Force** will result in disciplinary action as **specified** for a **Class** "**C**" violation.

## B. Duty to Report Use.of Physical Force

I. Whenever any ,member(s) is required,'onduty, to use any physical force or **departmental equipment** against **another** person, the member(s) shall **immediately** notify their IMMEDIATE SUPERVISOR. If this **is not possible,** the **member(s)** will.notify'their **IMMEDIATE** SUPERVISOR as **soon.as**.possible **following** the **incident.** The notified **supervisor** will submit a Departmental **Information**.to.the Chief of.Police and will **cause** the member**(s)**·to cover their actions in their **incident** report..

2. Whenever.any **member(s)** is required, **off** duty, to use or threaten the use of any physical force or use any **departmental equipment** against another person, the **member(s)** shall immediately notify their ON DUTY SUPERVISOR. If this is not **possible**, the **member(s) will** notify an ON DUTY SUPERVISOR as **soon as possible** following **the** incident. **The notified supervisor will** submit·a Departmental **Information** to the **chief** of **Police** and will cause the **member(s) to** submit a .Departmental Information report.no **later** than the **member**'s next work.day..

VIOLATIONS OF **SECTIONS** B1 OR B2 WILL RESULT IN DISCIPLINARY ACTION **SPECIFIED** FOR A CLASS C VIOLATION..

## C. Display of Firearms

**Whenever**·,any member(s) display a **firearm** in **the** presence of a person, or **directs** the firearm at that person, the **member(s)** shall immediately notify their immediate **supervisor**. **If this** is not possible, **the** member(s) will notify.their immediate **supervisor** as soon as possible **following** the incident.

The notified supervisor will submit a Departmental Information to the Chief of Police and will cause the member(s) to cover their actions in their incident report. Violations of Section C will result in disciplinary action as specified for a class "E" violation.

A-11

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ROBERT D. BROWN,            )
                           )
          Plaintiff,

v.                                     C.A. No. 07-23 (SLR)
                                     JURY OF 12 DEMANDED

WILMINGTON POLICE OFFICER RINEHART,  )
WILMINGTON POLICE OFFICER DRYSDALE,  )

          Defendants.       )

### AFFIDAVIT OF JOHN R. DRYSDALE

STATE OF DELAWARE    )
                          SS.
NEW CASTLE COUNTY    )

      I, JOHN R. DRYSDALE, being duly sworn according to law, depose and state that the information contained herein is based on my own personal knowledge and is true and correct:

1)      I am a police officer with the Wilmington Police Department. I currently hold the rank of sergeant. I have been a police officer with the Wilmington Police Department for approximately twenty years.

2)      On April 16, 2006, the date of the incident that forms the basis of Plaintiff Robert Brown's Complaint, I was the immediate supervisor of Officers Matthew Hazzard and Michael Rinehart.

3)      On the above date, sometime between 5:20 a.m. and 6:00 a.m., I received a call from Officer Hazzard regarding an incident involving the use of non-lethal force on a disorderly subject who was resisting arrest. The subject was Brown. Officer Hazzard's call was consistent with departmental policy requiring officers to report such matters to their immediate supervisors. Officer Hazzard advised me that he was transporting Brown to the Wilmington Hospital emergency room.

4)      At approximately 6:00 a.m., I arrived at the emergency room. At that time I attempted to

interview Brown. Brown was uncooperative, belligerent and refused to answer my questions, telling me, "You know what happened, f— you, your one of them." Brown was also intoxicated.

5)    After completing all interviews, I concluded that Officers Hazzard and Rinehart's use of non-lethal force was reasonable and justified. The details of my investigation are contained in the Defensive Tactics Report under case number 30-06-35961.

6)    My actions in this matter were limited to investigating the use of non-lethal force by the officers involved in Brown's arrest. I was not present at 1627 West 3rd Street when Brown was arrested. I had no personal involvement in his arrest. I did not grab, slam or cap stun Brown as he alleges in his Complaint.


John R. Drysdale


SWORN AND SUBSCRIBED before me this 28th day of February, 2008.


Notary Public

DONNA L. KELLAM
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires Sept. 3, 2010


A-13

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ROBERT D. BROWN,                           )
                                           )
            Plaintiff,

v.                                         C.A. No. 07-23 (SLR)
                                           JURY OF 12 DEMANDED
WILMINGTON POLICE OFFICER RINEHART,  )
WILMINGTON POLICE OFFICER DRYSDALE,  )

            Defendants.                    )

### AFFIDAVIT OF MATTHEW HAZZARD

STATE OF DELAWARE      )
                                    SS.
NEW CASTLE COUNTY      )

     I, MATTHEW HAZZARD, being duly sworn according to law, depose and state that the information contained herein is based on my own personal knowledge and is true and correct:

1)    I am a police officer with the Wilmington Police Department. I currently hold the rank of patrolman. I have been a police officer with the Wilmington Police Department for approximately five years. Prior to my employment with the Wilmington Police Department, I was employed as a police officer by the Elsmere Police Department for approximately five years.

2)    On April 16, 2006, at approximately 5:20 a.m., I and Officer Michael Rinehart were on routine patrol in the 1600 block of West 3rd Street in the City of Wilmington. We were both in uniform and driving a marked police vehicle. I was driving the patrol car. I was Officer Rinehart's field training officer.

3)    Prior to entering the 1600 block of West 3rd Street, we had dispersed a group of individuals loitering on the corner of 3rd and Clayton Streets. I drove down 3rd Street, in the wrong direction, because I heard an unknown subject yelling from an unknown location, and I wanted to investigate

the matter.

4)     Upon entering the 1600 block of West 3rd Street, I observed a group of individuals on the porch and porch steps of 1627 West 3rd Street. I slowed the vehicle as we approached the group to make sure nothing was going on at the property. At that time, some of the individuals began to leave the porch area.

5)     One of the individuals on the porch, later determined to be Robert Brown, began yelling profanities at us. Both Officer Rinehart and I advised Brown to "calm down," "go inside," "relax," "nothing is going on." During this time, we remained in our vehicle. Officer Rinehart, seated in the passenger side of the vehicle, was on the same side as 1627 West 3rd Street.

6)     Brown continued to yell at us, using profanities. He kept yelling, "F--- you, I'm on my own porch, what you gonna do. I'm at my own house." We continued to advise Brown to calm down and go inside the house.

7)     I observed that Brown's disorderly behavior had created a disturbance, causing neighbors and other individuals in the 1600 block and the next block to come out and observe what was taking place. I also observed individuals looking out their windows.

8)     When our verbal attempts to control the situation failed, Officer Rinehart and I exited our vehicle to place Brown under arrest for disorderly conduct. When I reached the porch, Brown turned away from me and attempted to run into the house. I advised Brown to stop. Brown disobeyed my command and continued to try to get into the house. I grabbed Brown by the shoulder and advised him to place his hands behind his back because he was under arrest. Brown attempted to pull away from me. At this time I pulled Brown to the ground. Brown continued to struggle, laying on his hands and fighting Officer Rinehart and my attempts to place him in handcuffs. We advised Brown numerous times during the struggle to stop resisting, however, Brown continued to disobey our

orders, laying on his hands and struggling so that we could not secure his hands in handcuffs.

9)    I advised Brown again that he was under arrest and to stop resisting or I was going to spray him with pepper spray.  When Brown ignored my verbal command again and continued to struggle, I sprayed Brown in the face with my departmentally issued cap stun in an effort to gain control of Brown.  After being sprayed with the cap stun, we were able to grab Brown's left arm and hand.  However, Brown continued to struggle, and we could not gain control of his right hand.   I recall that eventually Brown stopped resisting, and we were able to place him in handcuffs.

10)    Due to the fact that Brown had been sprayed with cap stun, we immediately transported him to the Wilmington Hospital emergency room.  At the emergency room, Brown was treated for an abrasion to his head area and his eyes were flushed with water.

11)    Consistent with departmental policy, I contacted our immediate supervisor, Sergeant John Drysdale, to report the use of physical force and cap stun.  Sergeant Drysdale met us at the emergency room.

Matthew Hazzard

SWORN AND SUBSCRIBED before me this 27th day of February, 2008.

A-16

Notary Public

DONNA L. KELLAM
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires Sept. 3, 2010

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ROBERT D. BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-23 (SLR) |
| | ) | JURY OF 12 DEMANDED |
| WILMINGTON POLICE OFFICER RINEHART, | ) | |
| WILMINGTON POLICE OFFICER DRYSDALE, | ) | |
| | ) | |
| Defendants. | ) | |

**AFFIDAVIT OF MICHAEL RINEHART**

STATE OF DELAWARE   )
                          SS.
NEW CASTLE COUNTY   )

      I, MICHAEL RINEHART, being duly sworn according to law, depose and state that the information contained herein is based on my own personal knowledge and is true and correct:

1)     I am a police officer with the Wilmington Police Department. I currently hold the rank of patrolman. I have been a police officer with the Wilmington Police Department for close to three years.

2)     On April 16, 2006, at approximately 5:20 a.m., I and my partner, Matthew Hazzard were on routine patrol in the 1600 block of West 3rd Street in the City of Wilmington. We were both in uniform and driving a marked police vehicle. Officer Hazzard was driving the patrol car. At that time, I had graduated from the police academy and had been on the department for approximately four months. Officer Hazzard was my field training officer.

3)     Prior to entering the 1600 block of West 3rd Street, we had dispersed a group of individuals loitering on the corner of 3rd and Clayton Streets. Officer Hazzard drove down 3rd Street, in the wrong direction, to get to DuPont Street, one street over.

A-17

**4)**     Upon entering the 1600 block of West 3rd Street, Officer Hazzard and I observed a group of individuals on the porch and porch steps of 1627 West 3rd Street.  Given the fact that it was approximately 5:20 a.m., Officer Hazzard slowed the vehicle as we were passing the group to make sure nothing was going on at the property.

5)     As our vehicle came upon the group, one of the individuals on the porch, later determined to be Robert Brown, yelled out, "If it was me going the wrong way on the street I'd be getting locked up, mother f—!"  Both Officer Hazzard and I advised Brown to "calm down," "go inside," "relax," "nothing is going on."  During this time, we remained in our vehicle.  When Brown began yelling, the other individuals on the porch steps began to walk away.

6)     Brown continued to yell at us, using profanities.  He kept yelling, "F--- you, I'm on my own porch, what you gonna do;" "I'm gonna call my lawyer, f — you, I'm at my own house."  We continued to advise Brown to calm down.

7)     I observed that Brown's disorderly behavior had created a disturbance, causing neighbors and other individuals in the 1600 block and the next block to come out and observe what was taking place.  I also observed individuals looking out their windows.

8)     When our verbal attempts to control the situation failed, Officer Hazzard and I exited our vehicle to place Brown under arrest for disorderly conduct.  When Officer Hazzard reached the porch, I observed Brown turn away from us and attempt to run into the house.  Officer Hazzard advised Brown to stop.  Brown disobeyed his command and continued to try to get into the house.  Officer Hazzard grabbed Brown by the shoulder and advised him to place his hands behind his back because he was under arrest.  Brown shrugged off Officer Hazzard's hand.  At this time Officer Hazzard pulled Brown to the ground.  Brown continued to struggle, laying on his hands and fighting our attempts to place him in handcuffs.  We advised Brown numerous times during the struggle to

stop resisting, however, Brown continued to disobey our orders, laying on his hands and struggling so that we could not secure his hands in handcuffs.

9)    Officer Hazzard advised Brown again that he was under arrest and to stop resisting or he was going to be sprayed with pepper spray. When Brown continued to struggle, Officer Hazzard sprayed Brown in the face with his departmentally issued cap stun in an effort to gain control of Brown. After being sprayed with the cap stun, we were able to grab Brown's left arm and hand. However, Brown continued to struggle, and we could not gain control of his right hand. At this time, Officer Hazzard used the heel/palm of his hand to deliver a "stun blow" to the left side of Brown's head and I used my right knee to delivered a "stun blow" to Brown's right thigh. As a result of our actions, Brown stopped resisting, and we were able to place him in handcuffs.

10)    Due to the fact that Brown had been sprayed with cap stun, we immediately transported him to the Wilmington Hospital emergency room. At the emergency room, Brown was treated for an abrasion to his head area and his eyes were flushed with water.

11)    Consistent with departmental policy, Officer Hazzard contacted our immediate supervisor, Sergeant John Drysdale, to report the use of physical force and cap stun. Sergeant Drysdale met us at the emergency room.

Michael Rinehart

SWORN AND SUBSCRIBED before me this 27th day of February, 2008.

A-19

Notary Public

ANNE S. HERRELL
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires Oct 15, 2009

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROBERT D. BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-23 (SLR) |
| | ) | JURY OF 12 DEMANDED |
| WILMINGTON POLICE OFFICER RINEHART, | ) | |
| WILMINGTON POLICE OFFICER DRYSDALE, | ) | |
| | ) | |
| Defendants. | ) | |

<u>NOTICE OF SERVICE</u>

I, Rosamaria Tassone, Esquire, hereby certify that on this 7th day of March, 2008, I electronically filed Appendix to Defendants' Opening Brief in Support of Their Motion for Summary Judgment with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following and that these documents are available for viewing and downloading from CM/ECF. A copy of the document was mailed to the following individual:

Robert D. Brown
Inmate Number 231393
Howard R. Young Correctional Institution
P.O. Box 9561
Wilmington, DE 19809

　　　　　　　　　　　/s/ Rosamaria Tassone
Rosamaria Tassone (I.D. #3546)
City of Wilmington Law Department
Louis L. Redding City/County Building
800 French Street, 9th Floor
Wilmington, Delaware 19801-3537
(302) 576-2175