## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF DELAWARE

| ROBERT D. BROWN, | ) |
|---|---|
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 07-023-SLR |
| | ) |
| WILMINGTON POLICE OFFICER | ) |
| RINEHART and WILMINGTON | ) |
| POLICE OFFICER DRYSDALE, | ) |
| | ) |
| Defendants. | ) |

Robert D. Brown, Pro Se Plaintiff.  Howard R. Young Correctional Institution, Wilmington, Delaware.

Rosamaria Tassone, Esquire, City of Wilmington Law Department, Wilmington, Delaware.  Counsel for Defendants Officer Rinehart and Officer Drysdale.

**MEMORANDUM OPINION**

Dated: September 𝒷, 2008
Wilmington, Delaware

**ROBINSON, District Judge**

## I. INTRODUCTION

Plaintiff Robert D. Brown ("plaintiff"), an inmate at the Howard R. Young Correctional Institution ("HRYCI"), filed this action pursuant to 42 U.S.C. § 1983. He proceeds pro se. Presently before the court are motions for summary judgment filed by plaintiff and Wilmington Police Officers Rinehart ("Rinehart") and Drysdale ("Drysdale"). (D.I. 24, 25) Also before the court are plaintiff's motion for an extension of time and motion to compel. (D.I. 28, 29) For the reasons set forth below, the court will grant defendants' motion for summary judgment and will deny plaintiff's motions.

## II. BACKGROUND

Plaintiff alleges that on April 16, 2006, while on his property, he was approached by defendants and "unduly harassed." (D.I. 2) Plaintiff alleges defendants did not arrest him or attempt to arrest him but dragged him off his porch, slammed him on the concrete, and pepper sprayed him. (*Id.*) He was taken to the hospital for treatment. Plaintiff was charged with resisting arrest and disorderly conduct and the charges were ultimately dismissed. (D.I. 16) Plaintiff alleges defendants violated his right to due process and used unnecessary force. He seeks compensatory and punitive damages.

## III. DISCUSSION

### A. Standard of Review

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears

the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Federal Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted).

If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). A party opposing summary judgment "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Indeed, to survive a motion for summary judgment, plaintiff cannot rely merely on the unsupported allegations of the complaint, and must present more than the "mere existence of a scintilla of evidence" in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Although the court must construe allegations in favor of a pro se plaintiff, *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), and defendants bear the burden of proving

-2-

that no genuine issue of material fact exists, plaintiff must nonetheless, at the summary judgment stage, adduce more evidence than bald assertions in the pleadings without any factual support in the record. *See DeHart v. Horn*, 390 F.3d 262, 267 (3d Cir. 2004) ("In reviewing the grant of summary judgment, we must affirm if the record evidence submitted by the non-movant 'is merely colorable or is not significantly probative.'" (internal citation omitted)); *see also Beard v. Banks*, 548 U.S. 521, 530-534 (2006). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Plaintiff moves for summary judgment on the basis that a police report and a defensive tactics report describe two different accounts of what occurred on April 16, 2006. Defendants move for summary judgment on the basis that Rinehart is entitled to qualified immunity for his actions during plaintiff's arrest and that Drysdale had no personal involvement in plaintiff's arrest.

## B. Personal Involvement

When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Personal involvement can be shown through allegations that a defendant directed, had actual knowledge of, or acquiesced in, the deprivation of a plaintiff's constitutional rights." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207

(3d Cir. 1988); *see Monell v. Department of Social Services*, 436 U.S. 658, 694-95
(1978). Supervisory liability may attach if the supervisor implemented deficient policies
and was deliberately indifferent to the resulting risk or the supervisor's actions and
inactions were "the moving force" behind the harm suffered by the plaintiff. *Sample v.
Diecks*, 885 F.2d 1099, 1117-118 (3d Cir. 1989); *see also City of Canton v. Harris*, 489
U.S. 378 (1989); *Heggenmiller v. Edna Mahan Corr. Inst. for Women*,128 Fed. Appx.
240 (3d. Cir. 2005).

Drysdale seeks summary judgment on the basis that he had no personal
involvement in plaintiff's arrest. Plaintiff argues that summary judgment is inappropriate
because Drysdale wrote and signed off on the crime report and defensive tactics report.
The complaint alleges that Drysdale was on patrol with Rinehart on the date of the
occurrence. The record reflects that Police Officer Matthew Hazzard ("Hazzard") was
on patrol with Rinehart, not Drysdale.

At the time of the occurrence, Drysdale was the immediate supervisor of
Rinehart. (D.I. 26, A-12) On the morning in question, Drysdale was advised that there
had been an incident involving the use of non-lethal force on a disorderly subject (i.e.,
plaintiff) who was resisting arrest and who was being taken to the hospital. (*Id.*)
Drysdale went to the hospital and attempted to interview plaintiff but he was
uncooperative. (*Id.* at A-13) Drysdale prepared a defensive tactics report regarding the
incident. (*Id.*) Drysdale was not present at the time plaintiff was arrested and did not
grab, slam, or cap-stun plaintiff.[1] (*Id.* at A-13)

---

[1]The pepper spray used by the Wilmington Police Department is oleoresin
capsicum ("cap-stun"). (D.I. 26, A-4)

-4-

The law is clear that a § 1983 action cannot lie against Drysdale based upon his supervisory position. Moreover, it is undisputed that Drysdale was not present at the time plaintiff was arrested and, therefore, had no personal involvement in the arrest. Indeed, Drysdale did not speak to plaintiff until after plaintiff had arrived at the hospital. For the foregoing reasons, the court will grant Drysdale's motion for summary judgment and will deny plaintiff's motion for summary judgment.

## C. Qualified Immunity

Whether Rinehart is entitled to qualified immunity requires a two-step inquiry: whether his acts violated a constitutional or statutory right and, if they did, whether that right was clearly established at the time of the violation. *See Yarris v. County of Delaware*, 465 F.3d 129, 140-41 (3d Cir. 2006) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). If no constitutional right is violated, there is no necessity for further inquiries concerning qualified immunity. *Saucier*, 533 U.S. at 201.

To determine whether Rinehart committed a constitutional violation by using excessive force in the context of an arrest, the court applies the Fourth Amendment's "reasonableness test."[2] *Graham v. Connor*, 490 U.S. 386, 395 (1989). "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and

_____

[2]Plaintiff raises his claims under the Eighth Amendment. Excessive force claims arising out of an arrest, however, are analyzed under the Fourth Amendment, *Graham v. Connor,* 490 U.S. 386 (1989), and excessive force claims for pretrial detainees are analyzed under the Fourteenth Amendment, *Sylvester v. City of Newark,* 120 Fed. Appx. 419, 423 (3d Cir. 2005). Excessive force claims for those convicted of a crime are analyzed under the Eighth Amendment, *Graham v. Connor,* 490 U.S. at 395 n.10. The actions plaintiff complains of arose out of his arrest.

circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397; *Kopec v. Tate*, 361 F.3d 772, 777 (3d. Cir. 2004); *Mosley v. Wilson*, 102 F.3d 85, 95 (3d Cir. 1996). A court must judge the reasonableness of particular force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Application of the test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. Other relevant factors include "the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Estate of Smith v. Marasco*, 318 F.3d 497, 515 (3d Cir. 2003) (citing *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997)).

Plaintiff contends that he should be granted summary judgment because the April 16, 2006 police report and the April 16, 2006 defensive tactics report describe two different accounts of the April 16, 2006 occurrence. Rinehart argues that he is entitled to qualified immunity for the actions he took when arresting plaintiff.

Plaintiff has not produced evidence from which a factfinder could arguable infer that the use of force was objectively unreasonable in light of the circumstances surrounding plaintiff's arrest. The record reflects that Rinehart and Hazzard were on a routine patrol during the early morning of April 16, 2006. (D.I. 26, A-14, A-17) Rinehart

and Hazzard were in uniform and driving in a marked police car. (*Id.*) Hazzard was driving the car and heard an unknown person yelling from an unknown location. (*Id.* at A-14)  Hazzard drove to the 1600 block of West 3rd Street and slowed the car when a group of individuals on the porch steps at 1627 West 3rd Street was observed. (*Id.* at A-15)  Plaintiff began yelling profanities at the officers and Hazzard and Rinehart told plaintiff to "calm down", "go inside", "relax", but plaintiff continued to yell profanities at them. (*Id.* at A-15, A-18)  Again Hazzard and Rinehart told plaintiff to calm down and to go inside the house.  (*Id.*)

Hazzard and Rinehart saw that plaintiff's conduct had created a disturbance and caused neighbors and others to come outside to see what was taking place.  (*Id.*) Because Hazzard and Rinehart were unable to control the situation verbally, they left their car to place plaintiff under arrest for disorderly conduct.  (*Id.*)  When Hazzard reached the porch, plaintiff turned and attempted to run into the house.  (*Id.* at A-15) Hazzard told plaintiff to stop, but plaintiff continued to try to get into the house.  (*Id.*) Hazzard grabbed plaintiff by the shoulder and told plaintiff to place his hands behind his back because he was under arrest, but plaintiff attempted to pull away from Hazzard. (*Id.*)  Hazzard pulled plaintiff to the ground, plaintiff continued to struggle, and laid on his hands.  (*Id.*)  Hazzard and Rinehart told plaintiff several times to stop resisting, but he continued struggling and they were unable to secure plaintiff's hands in handcuffs. (*Id.* at A-16; A-18).  Hazzard told plaintiff that he was under arrest and to stop resisting or he would spray plaintiff with pepper spray.  (*Id.* at A-16)  Hazzard sprayed plaintiff in the face with cap-stun in an effort to gain control.  (*Id.*)  Even after being sprayed,

-7-

plaintiff continued to struggle. (*Id.*) Hazzard used the heel/palm of his hand to deliver a "stun blow" to the left side of plaintiff's head. (*Id.* at A-19) Rinehart used his right knee to deliver a "stun blow" to plaintiff's right thigh. (*Id.*) Plaintiff eventually stopped struggling and the officers were able to handcuff plaintiff. (*Id.*) During this time, the officers discovered that plaintiff was intoxicated. (D.I. 26, A-4, A-5) Plaintiff was taken to the hospital to treat an abrasion to the head and to flush his eyes. (*Id.* at A-19)

Although the written reports of the April 16, 2006 occurrence vary slightly, the undisputed facts show that plaintiff demonstrated unprovoked animosity towards Rinehart and Hazzard upon their arrival at the scene and refused to comply with their requests that he calm down. The circumstances described gave the police officers probable cause to believe plaintiff violated the law by disturbing the peace. Plaintiff was given warning of the consequences of his behavior, and advised that he would be subject to arrest if he failed to calm down and cease creating a disturbance. It is undisputed that plaintiff failed to comply and attempted to run into the house to evade arrest. As a result, Hazzard and Rinehart used physical force to restrain plaintiff in order to effectuate the arrest. The record reflects that it was Hazzard, not Rinehart, who used the cap-stun on plaintiff. Moreover, the record reflects that Rinehart only used additional force when, after being cap-stunned, plaintiff continued to resist. It was at this time that Rinehart used his knee to strike plaintiff in the right thigh area.

The Supreme Court affords arresting officers "the right to use some degree of physical coercion. . . ." *Graham,* 490 U.S. at 396. Here, the arresting officers did not use more physical coercion than necessary. When plaintiff continued to resist, it was

-8-

reasonable for the officers to physically restrain him and to administer the cap-stun and stun blows in order to effectuate the arrest. The use of the cap-stun and stun blows, given plaintiff's's non-compliance, was plainly proportional to the need for force. *See, e.g., Janicsko v. Pellman,* 774 F. Supp. 331, 341-42 (M.D. Pa.1991), *aff 'd,* 970 F.2d 899 (3d Cir.1992) (denying summary judgment because officer may have repeatedly kicked plaintiff, but stating "[t]he other measures used by defendants, the restraints, the pulling of hair, the manhandling, may be viewed as a matter of law the concomitants of a contested arrest."); *Nolin v. Isbell,* 207 F.3d 1253, 1255, 1257 (11th Cir. 2000)(no excessive force where officer grabbed plaintiff from behind, threw him against a van three or four feet away, kneed him in the back, pushed his head into the side of the van, and searched his groin in an uncomfortable manner); *Foster v. Metro. Airports Comm'n,* 914 F.2d 1076, 1082 (8th Cir. 1990)(no excessive force where plaintiff was pushed against a wall twice on the way to the holding area, [but] also testimony no injury as a result of being pushed); *Ankele v. Hambrick,* No. CIV.A. 02-4004, 2003 WL 21223821 (E.D. Pa 2003), *aff'd,* 136 Fed. Appx. 551 (3d Cir. 2005)(show of force of slamming plaintiff onto hood of patrol car reasonable given the uncertainty presented by the arrestee's conduct).

A reasonable jury could conclude that the force used was reasonable given the conduct of plaintiff. Accordingly, the court finds that any force that may have been applied does not rise to the level of a constitutional violation. Because plaintiff has failed to meet his burden of showing a genuine issue of material fact as to the first prong of qualified immunity, there is no need to engage in further qualified immunity

analysis. Therefore, the court will grant Rinehart's motion for summary judgment on the basis of qualified immunity and will deny plaintiff's motion for summary judgment.

## IV. CONCLUSION

For the above reasons, the court will grant defendants' motion for summary judgment and will deny plaintiff's motion for summary judgment. The court will deny as moot plaintiff's motion for an extension of time to file a responsive brief and motion to compel. An appropriate order will issue.